Good morning and may it please the court. I'm William Mattingly. I'm here today representing Consolidation Coal Company. I've asked to reserve five minutes for rebuttal. This black lung benefits case has but one issue to resolve, but that one issue has proven very difficult for the agency to resolve and it's been before this court on two other occasions. That legal issue is whether Mr. Latusek has carried his burden of proof and established whether pneumoconiosis was a substantially contributing cause of his totally disabling pulmonary disease. Proving this has been quite complex, much like the disease which he has. The physicians identify it by various different terms, idiopathic pulmonary fibrosis, usual interstitial pneumonitis, diffuse interstitial fibrosis. I'll just call it IPF or idiopathic fibrosis this morning. There's certain things that physicians agree upon in this case, which is always easier for the parties as well as for the court to understand. One of the things the physicians agree upon is he has IPF and also has evidence of simple co-workers pneumoconiosis. The physicians agree he has a totally disabling pulmonary disease. The physicians agree that the pulmonary impairment is not caused by the pneumoconiosis. The split in the physician opinions is whether or not pneumoconiosis or coal mine dust has caused the IPF. I'd like to talk about three issues this morning. First, is modification a proper attempt to set aside this court's mandated holding? The second, is there actually new evidence that's presented that was not developed earlier with an exercise of due diligence? Finally, did the administrative law judge actually consider all the evidence resolving the conflicts in that scientific proof and explain why he resolved them the way he did? The first issue may be the most interesting. It takes into account not only the question of modification, but the interplay of the law of the case, this court's mandate, and quite frankly a constitutional concern whether an Article 2 executive agency can set aside the holding of an Article 3 court. Administrative law judge Burke has erred in setting aside the holding or the mandate of this court. The majority ruled that the opinion of Dr. Jennings and Hamna could not establish as a matter of law that causal link between the disability and exposure to coal mine dust. Yet, ALJ Burke relied on both of those opinions repeatedly in his decision. In fact, he even looked to Dr. Jennings' opinion to determine the onset date of benefits. Now, the Benefits Review Board passed this off as harmless error, suggesting that because there were other doctors he also relied upon the administrative law judge's decision could be affirmed. It's not harmless error. It is an agency ignoring the mandate of this court and that mandate said the opinion of Dr. Jennings, which did not change after this court issued its decision in 2004 and ALJ Burke considered the case, that opinion cannot as a matter of law establish entitlement in this case. Let me just be sure I understand what you're saying. You're saying even if there was other evidence, according to the conclusion, that the fact that the agency relied on evidence in your view they could not rely on, that this is reversible error? It is. Well, that would be a novel approach to reversible error and harmless error. So, go forth and make law if you can, but I've never heard that. There's another basis for it. What the court ruled was that the opinion of Dr. Jennings and the pathologist she relied on, Dr. Hamda, could not establish this link. ALJ Burke relied heavily on those opinions in his decision in order of awarding benefits. But there was other evidence establishing that link? There was other evidence that suggests to establish that link. You don't think it does it, but there is other evidence which purportedly establishes it. There is some other evidence, but I don't think that that solves the problem of the lack of respect for the mandate of this court and the fact that the agency, an Article 2 executive agency, is trying to set aside the law of this case. If there was no other evidence that would certainly show the lack of respect, but since there is some other, that's a matter of the way, isn't it? It would be, Judge Gregory, if we knew how it affected Judge Burke's calculus of decision-making, and we really don't. I don't think you can unweave that rope that he's put together because he's relied on all of these physician opinions. At the very least, the case has to be remanded back to the administrative law judge not to use the opinions of Dr. Jennings and Hamda in considering the case. But the mandate of this court didn't say that it nullified all of Dr. Burke's view of it. I mean, it just said it was not sufficient to carry the question of the day. So even though, as you say, it's unspecified which parts of Burke they have been persuasive, the mandate doesn't say it's all bad. It just said it wasn't enough to carry the day. Correct. And you can't rely on that same evidence that hasn't been changed to carry the day on modification, to overturn the Article III court ruling. Now, within the agency, modification is very broad. And I think that's a different question because an ALJ can overturn another ALJ's question, an ALJ can overturn the district director's decision. But even within the agency, they respect vertical precedent because the agency does not allow the district director at the administrative level to overrule an ALJ's decision. If modification is filed under those circumstances, the case has to go to a judge, an equal fact finder, to make the consideration. But what Judge Burke has done here is he says that there's new evidence, but there really isn't new evidence to consider. Yes, there are additional doctor's reports, but we have to look back to see when you're trying to modify, have you exercised reasonable due diligence in the prior claim? And if you have not, then you can't modify that prior decision. Because the Seventh Circuit's decision and this court's decision in Sharp, it's pretty clear that you don't get to retry the case on briefs. The McConnachie article that Judge Burke pointed out, it was relied upon by Drs. Rose and Dr. Parker in this case, cannot as a matter of law establish the medical fact that they're trying to say it does. It has a clinical presentation similar to Mr. Letoosik's. But as Dr. Rosenberg explained, and it's attached to the Joint Appendix at page 1092, the authors of that article said expressly, there is no doubt that interstitial pulmonary fibrosis occurs in coal workers, but it is unknown whether this is related to coal dust inhalation. The fact that the McConnachie authors said it is unknown whether this condition is related to coal dust exposure means that article can't make the ideological link or the bridge that the physicians are trying to use. A.L.J. Burke noted that Dr. Rosenberg had that complaint about the use of the McConnachie article, but he failed to explain why that didn't win the day. And in this circuit, you can't do that. Sterling Smokus versus Akers, Milburn versus Hicks, both say that an administrative law judge not only has to consider all the relevant evidence, he has to explain why he credits part and doesn't credit the other part of the case. The fact that Dr. Rosenberg said that this was a weakness of this article doesn't fulfill that duty that the Supreme Court in Allentown, Max Sales, says that the A.L.J. has to do under the APA. That is a major weakness in the case put forth by the claimant, because the doctors they rely upon either use the trilogy of articles that this court said was insufficient as a matter of law to prove the legal link between disability and coal dust exposure, or they point back to this McConnachie article that really shouldn't be allowed to be used on modification, because it was written in 1988, or years before the hearing that first occurred before the A.L.J. in 1997. An exercise of reasonable due diligence in developing the case and presenting it at that time with the physicians would have had them use that article if they thought it was that strong. And I think when you think about it in that fashion, the author's comment in that article that it is unknown whether the condition is related to coal dust exposure further weakens the claimant's case. They just simply failed to carry the burden of proof to establish, as is necessary in this record, that this man's IPF was actually causing, or was actually The Sharpe decision laid forth four factors, motive, diligence, futility, and accuracy to consider. The accuracy of the physician opinions has not been considered in this case, because they all rely on the trilogy of articles that this court ruled in 2004 cannot establish this legal burden. The diligence was not reasonably exercised, because that 1988 article, if it was going to be relied on in proof in this case, should have been brought forth at the prior hearing. The motive, using new evidence, and the McConnachie article, is simply not enough to pass muster under the Sharpe standard to find that it is within the interest of justice under the Act to continue and allow modification to occur in this case. In addition to those errors, the Administrative Law Judge has yet to analyze all of the medical evidence correctly. In 2006, Mr. Latussek underwent a single lung transplant. That explanted left lung was looked at by three pathologists, Dr. Dasik at UPMC in Pittsburgh, Dr. Noya, and Dr. Crouch. Their reports are at pages 787 through 790 of the Joint Appendix. Please look at those. The Administrative Law Judge fails to understand that Dr. Dasik's report finds usual interstitial pneumonia pattern of uncertain etiology. Dr. Noya concludes that this is an idiopathic disease. Dr. Crouch looks not only at the biopsy sample from the right lung, which was much smaller in 2002, but the entire explanted lung, and concludes the explanted lung had no pneumoconiosis in it, nothing but the IPF was present. The prior biopsy showed mild, simple pneumoconiosis. The Administrative Law Judge suggests that that is an inconsistency in the pathology reports. It's not. The fact that it was a unilateral disease and mild in one lung and not present in the other is not an inconsistency among the pathologists. On remand from the board, the Administrative Law Judge was instructed to look at these reports. He looked at them. He discredited Dr. Noya for reasons that cannot withstand scrutiny, but he never tells us why Dr. Crouch's opinion is not credited. He just says, I credit the opinion of Dr. Jennings, Rose, and Parker. That's not enough. One of the things that is evident when you look at the respondent's briefs in this case, they don't want to talk about the fact that the Administrative Law Judge confused everything in his decision by relying on Dr. Jennings' opinion. That's a critical flaw that cannot be overlooked in this case. Dr. Jennings' opinion has not changed since the first time this case was before the court. There is no way that Dr. Jennings' opinion can be used to substantiate awarded benefits. Unless there are questions, I'll concede now and be back for rebuttal. Thank you, Mr. Madden. May it please the court. My name is Jeff Goldberg. I'm representing the Director, Office of Workers' Compensation Programs. This case has a long history and a large file, but the issues are really not that complex. Mr. Goldberg? Yes. Do you know where Ms. Howard is? Yes. Oh, she's going to come up next. We have you as third, but you're going to be second. Well, we signed in. We registered, but I would go first. Fine. The order was reversed on the sheet in front of us. Fine. I'm sorry to interrupt you. Not a problem. Beginning with modification. The law of the case rule does not apply because, as you pointed out, there is new evidence. There are new doctors' opinions. They rely on new medical studies. There is the pathology evidence from the removed lung, and the removed lung, contrary, I'll just mention here, contrary to Dr. Crouch's opinion. The surgeon who removed it found anthracotic tissue mixed with the diffused fibrotic tissue. Modification reopens the denied claim. The ALJ is not relying on the evidence this court discredited in its prior opinion. Dr. Jennings' opinion was far more relevant to the question of onset date than it was to the question of entitlement. The ALJ relied on Drs. Dauber, Parker, and Rose. They relied on new medical studies, not just Dr. McConnachie, but other studies, too. Dr. Siebold, Dr. Cockroft, Dr. Morgan, Dr. Parks. There's a long list of them. Drs. Green and Valliathan, the ALJ noted that a 2008 study from Drs. Cohen, Parker, and Green actually made the connection between IPF and coal dust exposure. There is nothing in the record or the ALJ's opinion that overturns or seeks to undermine this court's prior denial. There just isn't. You've heard Consall argue this is like SHARP, but it isn't like SHARP. In SHARP, the ALJ found that the minor had complicated pneumoconiosis, went up to the board, the board affirmed it, and there the decision sat for seven years while the minor collected benefits. Only after he died and after this court held that a survivor could assert collateral estoppel did the operator suddenly realize that, oh, we're going to be liable for the survivor's claim as well, and only then did they file for modification. That is not this case. Claimant filed a timely modification with new evidence, although they were not legally required to do so. And it's not separation of powers because there is no retroactive reopening. Modification is a congressional reopening of a claim that has not yet been finally denied. As for entitlement, simply a matter of substantial evidence. The ALJ looked at the record. He found that the doctors Dauber, Rose, and the other one, Parker, relied on new evidence. They explained their opinions. All the doctors agree that IPF can be caused by environmental or occupational factors, including wood dust and dust from metals. All the medical studies agree there is a higher preponderance of IPF occurs more common in coal miners than it does in non-coal miners. The 2008 study actually found the link, just as it found the link to COPD, and medical science evolves. It wasn't that long ago that the operators' doctors were saying that coal dust can't cause an obstructive impairment or that simple pneumoconiosis can't be disabled. The doctors specifically cited, especially Dr. Parker, the evolution of science on this issue and the evidence underlying it. We cite, although it's not on the record, NIOSH has made the connection as well in 2014. You know, I think I've run out of things to talk about early as it is, so unless you have any questions, I will sit down. Thank you very much. Thank you so much. I am so sorry for the inconvenience. No inconvenience at all. I am just burdensome, but I will try to simplify this case for you. I have lived this case for the majority of my career, and in trying to understand the medical science behind it, the mechanisms that the doctors and medical science have identified, which were discussed in Dr. Rose's most recent deposition. Perhaps the most clear evidence, understandable evidence of the medical science in the record, is that of Dr. Dauber's deposition testimony. He was the physician at the University of Pittsburgh that headed their transplant program. He retired shortly after Ted's transplant in 2006. He explained during his deposition that as part of that transplant program, he saw many IPF patients that required lung transplants. The whole population of IPF patients would never show lymph nodes adjacent to the lungs that had anthracotic pigmentation in them. Ted's, on the other hand, did. He's the only physician who opened up the chest, who saw what had drained from the lungs into the lymphatic system. He said that that convinced him that there was a causal relationship. He also identified the numerous medical articles by Green and Vallothan, I believe, and felt that that supported his conclusions, that coal mine dust exposure did play a role in the pathogenesis of Mr. Latussek's IPF. And to me, that was an observation that I understood. I think that... How did the evidence of the coloration in the lymphatic system connect it to coal dust? Well, because that's where the coal dust eventually drained from the lungs into the lymphatic... It was anthracotic pigmentation was the description. Right, the pigmentation. Was that the substance behind coal dust, or was that the pigmentation change based on being exposed to coal dust? Do you understand my question? Pigmentation, was that the result of the coal dust? Or was it actually evidence of the substance of coal dust being present? I believe that that distinction was not made to my understanding beyond Dr. Dauber's observation that the lymphatic system, the lymph nodes adjacent to the lungs were... They were black. I mean, that's... That's right. The typical IPF, which is a rare disease, actually, but the typical IPF doesn't have that pigmentation. It has pink lymph nodes. His deposition probably describes it better than I could, but it seemed quite logical to me in addition to the state of the medical science in the interim from the time that Mr. Latussek's case was earlier ruled upon and the time that he had his lung transplant. So in terms of him, particularly science, statistical significance, I think you said that was the only one that he saw that pigmentation present in the lymphatic system. That's the only one that he discussed, although he did treat other coal miners at the University of Pittsburgh. I believe that he, Dr. Dauber, began the lung transplant program, which became the largest in the country, but he began that four years prior to his retirement. So he treated patients in the clinical aspect for quite some time prior to that. And that's consistent with Dr. Rose, Dr. Jennings, Dr. Parker, who is what is known as a B-plus reader. He trained doctors to become B-readers for NIOSH. So he was very highly qualified, and he testified that doctors were more and more coming to recognize the relationship between coal mine dust exposure and IPF, that lungs have a limited amount of responses that they can make to irritants, and that this was consistent with that. Now, Mr. Mattingly did mention the trilogy of articles that were earlier discussed by this court and its experts, and in particular, back when Dr. Kleinerman gave testimony regarding those articles, Dr. Kleinerman found that those articles could not be relied upon because they were premature. And that's what we're saying in our modification, that those articles were part of building the consensus among the medical community that coal mine dust can cause this disease. And that's where the modification basis really is appropriate in this case, because if we look back at cigarette smoking, which is fairly generally accepted as not a healthy habit, I didn't realize it, but Congress never got around to mandating the warning labels on cigarette smoke packets until 1965. And we just last month got a decision from the court that mandated them to advertise the effects of cigarette smoking. This is probably the same situation where medical science just needed more time to reach consensus, and clearly the decisions of the Benefits Review Board are supported by that science, the discussion of the medical literature, and the medical evidence from highly qualified physicians that deal with IPF for many years. I hope I simplified it, but I'm not sure that I did. I'm sorry. It seems like it's still a differential diagnosis you're making, in the sense that I usually don't see the pigmentation. It is. But differential diagnoses normally have some continuum of statistical significance. Well, in this case for example. But you could say that maybe he's found it best. IPF is caused by a different cause. Well, Dr. Rose, Dr. Dauber, Dr. Parker, Dr. Jennings, all, and this is prior to the current state of medical science. Even when Mr. Lattusi first presented, he was in his late 30s when this disease began. Based on their experience with IPF patients, these doctors all said that is way outside of the initial stage of presentation by these patients. Statistically, that's quite valid. The European Thoracic Society and the American Thoracic Society comes out with a monograph every 10 years. The European Society cautioned that when a patient presents and there's no other cause out there, maybe medication or some other known exposure, but there's no other cause out there and there's an abnormally young age of onset, look for something to cause it. Because this is a disease that, thank goodness, comes up much later in life. And Mr. Lattusi was just way outside that norm. His survival rate, he was given three years to live. When he first saw Dr. Ren, he said, I just want to live long enough to see my daughter through college. I just want to be able to work long enough to get her through college. And he was told he had three years to live. He made it 16 before his transplant. I mean, he's just outside. Do you think the early onset helps you in terms of a cold us exposure to end the cough? Well, I think that that's a factor that the physicians look to, certainly. In terms of, as Congress has matured, too, in terms of presumptions. Presumptions of pneumoconiosis increase as your exposure is working in the mind. Yes. And his onset, and he did discuss at great length during his early hearing, the nature of his exposure. Because he was a long-wall coordinator. So he was exposed probably more than the normal coal miner to the silicates, which were a suspect in the implication of the pathogenesis of the IPF. He was the person that they called upon when the roof caved in. And he was the type of person, as he testified, that if he were to send his people in to do something dangerous, he would be right there with them for 24 or 48 hours. So he had an abnormally high amount of that exposure. Thank you all. I'm sorry. It is a question of the state of medical science. The director cites two articles that are not in this record, that are not officiated by any of the physicians, that are not able to be judicially noticed. Please ignore that argument and that citation in their brief. It very much is a question of science. And when you look at Dr. Rose's opinion, go back and look at her deposition because she says, probably, maybe, it's possible coal dust can cause this condition. She's more unsure the more she looks at the science than Administrative Law Judge Burke was in crediting her opinion. The Green and Cohen article is not a significant piece of medical science. It's not original research that looked at new statistics. It looked at existing literature. And as Dr. Rosenberg pointed out, that article relied on McConnachie. And when you look at McConnachie, the authors state, we cannot find that coal dust is the cause of this condition. The director misrepresents what Dr. Dasik at UPMC found. Dr. Dasik, at page 787, found usual interstitial pneumonia. That's in the lung tissue. A harmatoma, which is a benign tumor in the left lower lung. And multiple hyaluronic lymph nodes with focally calcified anthracotic-silicotic nodules. Lymph nodes are not part of the lung. Lymph nodes are a way station by which the lymphatic system cleans the lungs of impurities. Dr. Rosenberg, Dr. Wren, Dr. Spagnuolo all read that in this report. They read Dr. Noya's explanation. They read Dr. Crouch's explanation. And they all concluded, yes, Mr. Lutuzek has biopsy evidence of mild simple pneumoconiosis. Yes, he has a history of exposure to coal mine dust. Yes, his lymph node shows some dust. But that's not the cause of this disease. Science has not allowed us to say that IPF is caused by coal dust exposure. There is no reliable scientific basis to make that conclusion. Dr. Dauber even speculated in his deposition, one of the problems in this case. Mr. Lutuzek had pleurisy as a young man. Infections can break down the immune system and put with this condition, put it in line to start progressing. Perhaps that's the cause of his IPF. The better medical opinions here that are supported by science all conclude that this is an idiopathic disease. Dr. Rose's opinion and Dr. Parker's opinion simply are not persuasive when you look at the basis that they rely on, either the trilogy of articles or the McConnachie article. And if you go back and look at Dr. Rose's most recent deposition, she says the McConnachie article is the really important one and tries to downplay her reliance on the trilogy articles, but still relies on those articles to reach that causal connection opinion with regard to disability causation. Judge Gregory, in this case, Mr. Lutuzek's not available for any disability causation presumptions. He carries the burden of proof. And that's the problem that he has in this case. He has a disease that is not well understood. He has a disease that physicians say, well, cold us may be playing a role, but when they really are pushed, they point to two or three articles that don't help them make that bridge from a scientific standpoint. Tough cases sometimes make tough law. I don't think this is a tough situation. It's a burden of proof question. And the burden simply is not made in this case. And as a result, we've asked to have the award of benefits either reversed or remanded for consideration of the evidence as I've gone through today. Thank you. Thank you. All right. We'll come down to the council and see you next year.
judges: Roger L. Gregory, Diana Gribbon Motz, William B. Traxler, Jr.